R. and W. BUCHANAN *against* CURRY.

THIS was an action of covenant, on a contract made the 11th of *February*, 1812, between the plaintiffs and defendant, by which the plaintiffs engaged to deliver to the defendant, 8000 feet of oak timber, "at a convenient rafting place, on any of the *Salmon* rivers, *Pike* creek, or on the *St. Lawrence* river, at a good rafting place;" "to be delivered in all the month of *June* then next, at any of the aforementioned places." The defendant covenanted to pay to the plaintiffs, for the timber, at the rate of one shilling, *Halifax* currency, per foot, to wit : One half on the 1st of *March*, 1812, and the other half on the delivery of the timber. The plaintiffs averred a performance on their part, and assigned, as a breach of the defendant's covenant, the non-payment of the stipulated price. The defendant pleaded, 1. *Non est factum* ; 2. Payment of the one half of the price, and as to the other half, that the plaintiffs did not deliver the timber, &c.; 3. A submission and award, &c.; 4. Payment, &c. with *notice* of special matter to be given in evidence, embracing all the grounds of his defence.

The cause was tried at the *Franklin* circuit, in *June*, 1820, before Mr. Justice *Platt*.

To prove the execution of the contract, a witness was called, who proved the hand-writing of the subscribing witnesses, one of whom resided in *Montreal*, and that the other who had resided with one of the plaintiffs, in *Franklin* county, about a year before the trial, was seen by the witness, just setting out for *Williamstown*, in *Canada*, and as the witness understood, had removed there; that the witness understood, that he had left *W.*, but where he had gone the witness did not know, nor had he seen him since. The

*It is not unlawful for a citizen of this state to pay a debt, or perform a contract with an alien enemy, during war, if the payment or performance be made to the agent of such alien enemy within this state; the contract having been made before the war. As where R., a naturalized citizen, residing in this state, and W., his partner, a British subject, residing in Canada, entered into a contract the 11th of February, 1812, with C., a British subject, residing in Canada for the delivery of timber, &c. part of which was delivered prior to the declaration of war, of the 18th of June, 1812, and the residue afterwards, on the 30th of June, 1812, to the agent of C., at the place stipulated, being within the United States: Held, that such a completion of the performance of the contract was not illegal.*

Though a partner, *as such*, cannot bind his co-partner by a bond, or writing under seal, to comply with an award; yet, where an *award* is made pursuant to a submission so executed, by one partner, and who, afterwards, accepts the amount awarded in favour of the partnership, and endorses a receipt in full on the award, it is sufficient to bar the co-partnership claim; for it operates either as a release by one partner, or as an accord and satisfaction.

witness testified, that he was well acquainted with the hand-writing of the defendant; and that the signature to the contract was in his proper handwriting. The evidence was objected to, but the judge decided, that it was sufficient to prove the contract.

The evidence as to the other facts in the case, are sufficiently stated in the opinion of the Court, as delivered by Mr. Justice *Platt.* A verdict was taken for the plaintiff, for 1,463 dollars and 77 cents, subject to the opinion of the Court on a case, with liberty to enter a verdict for the defendant, or for the plaintiffs, for such sum as the Court might direct, and with leave to either party to turn the case into a special verdict, or bill of exceptions.

*Z. R. Shepherd,* for the plaintiff, contended, 1. That the evidence of the absence of the subscribing witnesses to the contract, was sufficient to authorize proof of the handwriting of the defendant, by another witness. 2. That the delivery of the timber was proved, to *Niel Livingston,* who was shown to be the agent of the defendant; and that this delivery was on the *Salmon* river, below the *French* mills, and within the county of *Franklin.* The plaintiffs began to deliver it on the 17th of *June,* and completed the delivery on the 30th of *June,* 1812, when the receipt of *L.,* the defendant's agent, was given, for the remainder of the timber, agreeably to the contract, to which it refers.

3. Though it appeared, that *Walter Buchanan* and the defendant, were *British* subjects, residing in *Canada,* and *R. Buchanan,* a naturalized *American* citizen, residing at *French Mills,* within this state ; yet, admitting the fact that both were alien enemies, they had a right to appoint an agent within the *United States,* to settle their affairs. (*Clark* v. *Morey,* 10 *Johns. Rep.* 69.)

4. As to the submission and award ; the bond of submission was executed by *W. B.,* one of the plaintiffs alone, at *C.,* in *Upper Canada ;* and one partner cannot bind his copartner by deed, or a submission under seal. Again ; war between the *United States* and *Great Britain* then existed, by which *R. B.,* the other plaintiff, and the defendant, became enemies to each other, and could not, therefore, law-

fully contract. Besides, the arbitrators were alien enemies, and could make no award, binding on *R. B.* (*Kyd on Awards*, 242. 2 *Mod.* 228. 15 *Johns. Rep.* 57. *Griswold* v. *Waddington*, S. C. 16 *Johns. Rep.* 16. 3 *Johns. Rep.* 188. 2 *Caines' Rep.* 254. 2 *Johns. Rep.* 213.)

NEW-YORK,
May, 18.21.

BUCHANAN
v
CURRY.

*Wheeler,* contra, insisted, 1. That the evidence as to the absence of the subscribing witness, who resided within this state, was not sufficient. 2. That the evidence of the delivery of the timber was not sufficient. There was no proof of any delivery to the defendant himself. The declaration of war was on the 18th of *June,* 1812, and, *eo instanti,* there was an end to all further transactions between the parties. A delivery of timber, after that day, was unlawful; and the 800 dollars which depended on the delivery of the residue of the timber, cannot, therefore, be the ground of an action. It does not appear how much was delivered on the 17th of *June,* but the delivery was not completed until the 30th of *June,* 1812.

3. One partner may submit a matter to arbitration, so as to bind his co-partner, and it is not averred in the pleadings that the submission was by deed. (3 *Johns. Rep.* 68. 14 *Johns. Rep.* 387. 17 *Johns. Rep.* 58.) At the time of the submission, one of the partners was resident in the *United States,* and the other in *Canada.* Though the war suspended the partnership, it did not sever their joint interest in *choses in action.* On principles of commercial policy and convenience, one partner ought to be allowed to bind his co-partner by submission to an award. The defendant performed the award, on his part, by paying the sum awarded against him; and the plaintiffs acquiesced, by accepting and endorsing it on the award. It is, now, too late to object to the award. (2 *Bos. & Pull.* 338. 2 *Caines' Rep.* 254. 3 *Term Rep.* 454. 4 *Term Rep.* 466. 8 *Term Rep.* 548. 15 *Johns. Rep.* 57. 16 *Johns. Rep.* 461. *Kyd on Awards,* 42. 382.) There is no express authority which says, that one partner cannot bind his co-partner by a submission to arbitration.

PLATT, J. delivered the opinion of the Court.

On the part of the plaintiffs, I think the contract was duly proved, and also that they delivered the quantity of timber according to contract, viz. to the defendant's agent, *Niel Livingston*, who resided during the spring and summer of 1812, at *French Mills*, in the county of *Franklin*. The evidence to establish such agency is clear and satisfactory; and the plaintiffs proved a receipt, in the following words, viz. : " *Salmon River*, 30*th June*, 1812. This day was culled by *John Hursden*, the remainder of the eight thousand feet of square oak timber, agreeable to *Walter* and *Robert Buchanan's* contract with *John Curry*, bearing date the 11th *February*, 1812, and was examined and received by me, according to my advice from *Wm. Johnson, Esq. Niel Livingston*." The defendant proved by *Joshua T. Cozens*, that *Walter Buchanan* had acknowledged to him, that the defendant had paid the advance money, that is, 800 dollars, payable 1st *March*, 1812, according to contract. It was proved that *Robert Buchanan*, one of the plaintiffs, was a naturalized *American* citizen, and resided at *French Mills*, in *Franklin* county : and that *Walter Buchanan*, the other plaintiff, and the defendant, *John Curry*, were *British* subjects, and resided in *Canada*, during the late war.

The places of delivery named in the contract are so general, that the plaintiffs had an election to deliver the timber within the *United States*, or in *Canada*. And it does not appear whether it was actually delivered in *Canada*, or in the *United States*. Nor does it appear how much of the timber was delivered *before the declaration of war*, (18th *June*, 1812,) or how much *afterwards*. A part, however, to complete the contract, was delivered, as appears by the receipt, at " *Salmon River*, on the 30th *June*, 1812."

The first ground of defence was, that the war dissolved the contract; and that it became unlawful to fulfil such an agreement between the defendant, who was an alien enemy residing in *Canada*, and one of the plaintiffs, who was an *American* citizen resident here.

To have transported the timber into *Canada*, pursuant to the contract, during the war, would have been unlawful :

and so far, the contract was dissolved, or restrained, by the
change from peace to war. But, upon the supposition,
which is well warranted by the proof, that the defendant,
an alien enemy residing in *Canada*, had an agent resident
at *French Mills*, within the *United States*, who received the
timber due on this contract, *during the war*, at places *with-
in the United States*, I see nothing unlawful or inconsistent
with the duty of allegiance, in the mutual performance of
the contract, in such a manner, during the war. If such a
contract had been entered *into* during the war, it would
have been illegal and void. But this agreement appears
to have been made before the war, in good faith, and ac-
cording to the usual course of business. There is no
ground for the position taken by the defendant's counsel,
that it was unlawful for the contracting parties voluntarily
to carry this prior agreement into effect, by delivering and
receiving the timber within the *United States*, during the
war. The war suspended the remedy by suit on the con-
tract; but it is not unlawful, voluntarily to pay debts, or
perform contracts to alien enemies; if the payment be
made, or the duty be performed in our country.

The rule is founded in public policy, which forbids, du-
ring war, that money, or other resources, shall be transferred,
so as to aid or strengthen our enemies. The crime con-
sists in *exporting* the money or property, or placing it in
the power of the enemy; not in delivering it to an alien
enemy, or his agent, *residing here*, under the control of our
own government.

Suppose, an *American citizen*, previous to the war, had
contracted to furnish a quantity of flour or cotton to a *Bri-
tish merchant*, to be delivered to his agent at the port of
*New-York;* would a declaration of war between the two
nations, render it unlawful to fulfil the contract? I think not.
In such a case, the interests of commerce are perfectly com-
patible with the rights of war; and public policy does not
forbid the transfer. None of the authorities cited, support
the doctrine contended for by the defendant on that point.

In the case of *Clarke* v. *Morey*, (10 *Johns. Rep.* 69.) it
was decided, that an alien resident in the *United States*,

during a war between his country and the *United States,* may sue and be sued, as in peace. If he may sue, *a fortiori,* he may receive payment, without suit. *Emerigon,* (1 *Trait. des Ass.* 567.) says, " Les créances que l'étranger a chez nous, lors de la declaration de guerre, subsistent en leur entier. S'il est forcé de se retirer, il lui est loisible de laisser sa procuration à un ami pour exiger ce qui lui est dû, et pour actionner ses debiteurs en justice." In *Cohn* v. *Penn,* and *Deniston & M'Gregor* v. *Imbrick,* (Circuit Court of U. S. *Pennsylvania,*) Judge *Washington* decided, that debts might be paid to the agent of an alien enemy residing here, but that no *remittance* could be made during war.

The defendant, also, relies upon a *submission and award,* to bar this suit. It appears, that on the 7th day of *April,* 1813, (during the war,) at *Cornwall,* in *Upper Canada, Walter Buchanan* (one of the plaintiffs) entered into formal bonds of submission to arbitration, with the defendant, of all matters in difference between these plaintiffs and the defendant, embracing the very claim now before us. *Walter Buchanan* signed and sealed the arbitration bond, for *Robert Buchanan,* as well as in his own right ; *Robert* then being a citizen of the *United States,* and resident here. An *award* was made pursuant to the submission, on the 7th of *April,* 1813 ; whereby the defendant, *John Curry,* was required to pay to the plaintiffs, on account of this timber, 73*l.* 16*s.,* lawful money of *Upper Canada,* on or before the 1st of *June* then next. The defendant gave in evidence a receipt, endorsed on the award, in these words, viz : " Received, *Montreal,* 20th *July,* 1813, from Mr. *John Curry,* 74*l.* 7*s.* 3*d.,* it being the amount of this award, with interest.                                                            WALTER BUCHANAN."

To this award the plaintiff's counsel objects, *first,* that on the authority of *Griswold* v. *Waddington,* (15 *Johns. Rep.* 57.) the war dissolved the partnership between *Walter* and *Robert Buchanan* ; and, 2dly, that *Walter* could not, *as partner,* seal a bond of submission, so as to bind his copartner *Robert,* and that no special authority for that purpose was given, or could be given, by *Robert* to *Walter,* during the war. In my judgment, these objections are not well founded. Although the war dissolved the partnership, yet the

effect was no greater than if the partnership had been dissolved by the mutual agreement of the partners. In that case, neither of them could any longer make any new contract to bind the other; but either of the former partners would have a right to receive payment, or settle the concerns of the partnership. The dissolution is prospective merely. It is true, that, strictly speaking, one partner cannot, as such, bind his copartner under seal, to comply with an award. And it is clear, that *Robert Buchanan* is not bound by this, technically, as an award. But I think it has the effect of extinguishing all claims on behalf of these plaintiffs arising out of that contract. There was a claim for money due on the contract, as the price of the timber: *Walter Buchanan*, and the defendant, being together in *Canada*, could not adjust it; and in order to determine the true balance, they agreed to submit the question to arbitration. The arbitrators reported a sum as due upon the contract; and the acting partner there agreed to accept it, and gave a receipt on the back of the award, declaring that he was satisfied with that adjustment of the claim. Now, it is clear, that the award is binding on *Walter Buchanan*, whatever may be its effect as to *Robert*. In *Strangford* v. *Green*, (2 *Mod.* 228.) the Court said, " the defendant may undertake for his partner; and having engaged for himself and his partner, to perform the award, notwithstanding the partner is not bound ; yet if he refuses, it is a breach of the defendant's promise." (*Kyd on Awards*, 42.) I think *Robert* is also concluded by that award, after payment of the sum awarded, considering it as a compromise, or liquidation of the claim, which *Walter* was authorized to make, in virtue of his general authority as partner in that contract. Here had not only been an award, but the sum awarded as a full satisfaction for the timber, has been accepted as such by *Walter Buchanan*. If all this had been done without sealing the submission, it would undoubtedly have concluded *Robert*, as well as *Walter*. The partnership demand would have been extinguished ; and, as it regards this suit, I think the effect is the same, whether the final balance due on the contract was liquidated and paid by mutual agreement of the defendant with one of the partners, or through the in-

NEW-YORK,
May, 1821.

tervention of arbitrators. It operates in the nature of a release by one partner, or as an accord and satisfaction. In *Bacon* v. *Dubarry*, (1 *Salk.* 70.) *Holt*, Ch. J. said, "that money paid and accepted, in pursuance of a void award, might be pleaded or taken as an accord with satisfaction." In my view, therefore, it is immaterial, whether the bonds of submission were duly proved at the trial or not. The *receipt* of *Walter Buchanan*, on the award, is in itself sufficient to bar this claim.

We are of opinion, that the defendant is entitled to judgment.

Judgment for the defendant.