## CHANDLER EASTMAN *vs.* DANIEL BURLEIGH AND WILLIAM BURLEIGH.

When a rule for a reference is by agreement taken from a justice, returnable to
him, it is sufficiently certain, if the subject matter of the controversy be specified,
and its amount.

The time for the return of such a rule may when recommitted be enlarged.

When all the referees meet under such a rule, a report by a majority of them is
binding.

If one undertakes to enter into an agreement to refer in this manner, in behalf of
himself and another, his authority should be shown and in some way appear on
the record, or the judgment on the report may be reversed.

THIS was a writ of error to reverse and annul a judgment rendered before a magistrate upon a report of referees.

From a copy of all the proceedings it appeared, that these parties " having a controversy between them under two " hundred dollars value, viz. about a certain quantity of " pine timber," agreed before the magistrate on the 13th of July, 1819, to refer it. The agreement, however, was signed by " *Daniel Burleigh* for himself and *William Burleigh*." A rule issued accordingly, reciting, that " *Daniel Burleigh* for " himself and brother *William Burleigh*," on the one part, applied for it, and it was made returnable by the referees on or before the first Tuesday of September then next ensuing, " the report of whom or any two of whom" was to be final.

The report recited, that all the referees, being three in number, met on the 26th of August, 1819, and having heard " the parties," awarded a certain sum in favour of *Daniel Burleigh* and *William Burleigh*, and the report was signed by two of the referees.

The record then proceeds to state, that the decision by the magistrate on said rule was postponed to the second Tuesday in September, 1819. It was then recommitted, returnable on or before the second Tuesday in October, 1819. A second report similar to the first was seasonably made, and judgment rendered accordingly in favour of the defendants in error for damages and cost amounting to about one hundred and ninety dollars.

The errors assigned by the plaintiff were,

*First*, that it does not appear that *William Burleigh* ever entered into said rule.

*Secondly*, that the subject matter of the controversy is not set out in the rule.

*Thirdly*, that the rule on which judgment was rendered was in fact not returned till after September, 1819, when by its terms it was to be returned on or before the first Tuesday of September, 1819; and

*Fourthly*, that only two of the referees signed the report first made, and also the report made on the recommitment.

*Mason*, for the plaintiff.

*I. Bartlett*, for the defendants.

Woodbury, J. Although the rule in this case does not specify the subject matter of the controversy, yet the agreement to refer describes it as a " certain quantity of pine timber;" and this agreement being on file with the justice, and legally a part of the record, is a sufficient explanation of the ground of the reference.

Most of the decisions concerning certainty in submissions have taken place upon our statute of June 21, 1797, and not under this act of December 16, 1796. 1 *N. H. Laws*, 89, 90. —1 *N. H. Rep.* 72, 190.—5 *Mass. Rep.* 264.—3 *ditto* 398, 324.—14 *ditto* 43.

The former statute requires " a particular statement" of the demands in controversy; but the latter is altogether silent on that point, and must be satisfied by any degree of certainty, which will prevent mistakes and frauds. The specification of the nature of the controversy is in this case amply sufficient for that purpose, and would probably suffice under the statute of 1796.

Another objection to the rule is, that only two of the referees signed the reports. But it appears from these reports that all the referees were present at both the hearings, and the law as to judicial officers corresponds with the form of the rule under which the referees acted, insomuch that the report of any two, when the whole number is three, binds the parties.

A further objection relates to the time of the return of the report : the rule provides for a return on or before the first Tuesday of September, 1819. The report is dated August 26, 1819, and for aught which appears was returned on the same day. On the second Tuesday of the same September,

*Eastman vs. Burleigh.*

Eastman
*vs.*
Burleigh.

it was recommitted and not returned again till about the 10th of October, but still within the time directed by the justice when the report was recommitted. As the parties themselves do not designate the time when the report was to be made;—as the justice therefore must perform that duty, and as on a recommitment of the report, which he doubtless has power to order, the recommitment might be nugatory without further time given for a new hearing, we think that objection not tenable. 2 *Strange* 1025 *note.—Hoyt vs. Wingate, Strafford, September*, 1805.

The remaining objection, that no authority appears in *Daniel Burleigh* to enter into the rule, and that *William* in no place appears in person to have had any concern with the proceedings, is of a different character and is fatal to the judgment. Unless *William* is bound by the award, it is not final; and an award not final is void. *Kyd on Awards*, 208.

It is now too late for *William*, after the award is in his favour, to ratify the doings of his brother, or to say that the present plaintiff appears to have no claims against either of them, or that the brother is at all events bound by the award. 1 *Rolle Ab.* 244.*

For unless *William* duly empowered his brother to enter into the rule, and it was entered into for him in such a manner as to be binding, it was a mere nullity to him; a suit would now lie in his favour for any claims on account of the timber; and thus the award not only fail to be final as to him, but lose all the mutuality intended by the plaintiff and the referees.

And though *Daniel* may be held for his brother as well as himself,(1) yet the principle is the same, as *Daniel* may not have been responsible and all the parties contemplated to be bound are not bound or precluded from further actions by the award.

In the first place nothing appears to show that *Daniel* was empowered to bind *William* in this way. If they were co-partners in trade, which is not probable as no company name is used, their co-partnership would not of itself empower one to bind the other by a submission under seal or

(1) 2 Mod. 228,Strangford vs. Gree.—3 Lev. 17, Bowyer vs. Biorksidge.—12 Mod. 129.—Salk. 70, Bacon vs. Dubarry.—Com. Di. 'Arbitrament' D. 2.

---

* 19 John. Rep. 143, 573.

Eastman
*vs.*
Burleigh.

by record. We say under seal, because though the principle is laid down generally, yet the cases reported are those of submissions by bond; and it is a technical principle that one partner cannot by the mere force of a co-partnership, bind the other by deed or bond. 7 *D. & E.* 208, *Harrison vs. Jackson.*—2 *Mod.* 228, *Strangford vs. Green.*

There must be some special authority for this purpose. 2 *East* 142, *Wilkes et al. vs Benk.*

So if the submission be " by record," because a *fortiori*, one cannot bind the other by a submission in a form more sacred than a specialty : whether one partner cannot bind the other by a parol submission, or a submission by a mere writing unsealed, is more questionable and need not now be settled. 7 *D. & E.* 209.—14 *Mass. Rep.* 45.

If they were not co-partners, but mere joint owners of the property, one could bind the other, if specially authorized, but not otherwise. *Kyd on Aw.* 42.

Among joint owners, whether the authority must be by deed, when the submission is by deed or record, need not be decided, as nothing appears in this case to show any special authority to *Daniel* in any mode whatever.*

Again, it is questionable whether in the absence of all evidence on the record, we ought to presume that any authority in fact existed. In most cases, authority of a similar description in attorneys, guardians, administrators, &c. is presumed or is held to be waived by not being objected to in an early stage of the proceedings. See *Whidden & Lang, ante.*

But these proceedings are under a special statute : every thing is to appear with distinctness, which is necessary to their validity; and a presumption like that above mentioned would hardly be warranted by analogy to other proceedings under similar statutes. 3 *John. Ca.* 107.—2 *Mass. Rep.* 420. —4 *Wheaton* 79.—6 *East* 426.—4 *D. & E.* 369.

Courts, however, should feel a strong inclination to overcome an objection of this kind after a full hearing on the merits; and I should hesitate to hold that the objection had not been waived, if this would relieve the case from all its difficulties.

---

* 19 John. Rep. 513, Skinner vs. Dayton et al.

But granting that a special authority existed in fact from *William* to *Daniel*, yet the evidence of it does not appear on record, and should *William* now deny the fact and prosecute the plaintiff anew for the timber, the presumption before mentioned would not make the record an estoppel to *William*, though it may have been to the plaintiff, but the plaintiff would be compelled to resort to the other evidence concerning the authority. The record shows no appearance by *William* in person, nor appearance for him by any practising attorney, and no appearance for him by his brother, under any authority whatever. The record is, therefore, defective. The proceedings on the face of them are not a final bar on the subject of the controversy. In England, by a rule of court when a judgment is confessed by an attorney, for a third person, the warrant of attorney must be filed. *Tidd* 500.

This proceeding under a special statute ought certainly to be no less strict. The authority of a practising attorney *ex officio* to refer a cause by a rule of court is a different question; and the mode of doing it if permissible may well enough conform to other common law proceedings. *Kyd Aw.* 45.—1 *Dall.* 164.—7 *Cranch.* 436, 449, *Holker vs. Parker.* —*Caldwell on Arbitrations* 31.

*Judgment reversed.*