## IN THE

# SUPREME JUDICIAL COURT

### FOR

## THE COUNTY OF OXFORD, MAY TERM, 1832.

---

*Memorandum.* The Chief Justice was not present during this term.

---

## FURBISH *vs.* HALL.

Overseers of the poor have no authority, as such, to intermeddle with the property of persons who receive relief from their towns, as paupers.

Therefore where the overseers of the town of *B*, *virtute officii*, submitted the claim of a pauper to arbitration, the award was held void, for want of mutuality.

THIS was an action of *assumpsit*, for not performing an award; and the case was thus : One *Abigail Furbish*, a woman of feeble understanding, had lived sometime in the defendant's family as a servant ; and being afterwards chargeable to the town of *Buckfield*, as a pauper, the Overseers of the poor, in that capacity, made a demand against the defendant for the balance claimed as her wages, to be applied in payment of expenses already incurred by the town, and which might afterwards accrue, for her support. This demand the defendant and the overseers jointly submitted to the determination of certain referees ; who awarded a balance due from the defendant, which he refused to pay ; and for the nonpayment of which this action was brought, in her name. And the question was wheth-

er the Overseers had authority to enter into the arbitration and bind the pauper, by virtue of their office.

*Fessenden* and *Brown*, for the plaintiff, contended that the Overseers had this power, as incident to the right of the town to be reimbursed its expenses out of the estate of the pauper. Without such power, indemnity would not be had in any case where the only means of payment consisted in a remedy against a third person. Besides, the lesser right, of controlling the property of paupers, is involved in the greater one of restraining their persons, requiring their labor and services, and receiving remuneration for the expenses of their support.

*S. Emery*, for the defendant, cited *Kyd on Awards*, 42, 45 ; *Stat.* 1821, *ch.* 122, *sec.* 19, 20 ; *Wilson v. Church*, 1 *Pick.* 23.

The opinion of the Court was read in the following *October* term, as drawn up by

PARRIS J. The plaintiff alleges in her writ that, having a just demand against the defendant which he refused to pay and denied to be due, the parties mutually submitted it to the determination of arbitrators, and mutually promised each other to abide by the award and perform the same.

The arbitrators having awarded in favor of the plaintiff's claim, this action is prosecuted for the recovery of the sum awarded.

On looking into the submission, it does not appear to have been entered into by the plaintiff or by any one purporting to act as her special agent or attorney, but by persons calling themselves Overseers of the poor of the town of *Buckfield*, who make the demand in the name of the town, for the use of the plaintiff as a pauper, to be appropriated in payment of expenses heretofore incurred for her support, and for her future maintenance.

In actions on the award itself, it is necessary to set out, in the declaration, only so much as is sufficient to support the plaintiff's case. 1 *Burr.* 278. But the plaintiff must state a mutual submission. 2 *Str.* 923 ; for if the submission be not mutual it is a mere nullity ; the award is not final, and is consequently void. *Kyd on Awards*,

Furbish v. Hall.

208. And it will be too late after the award is made, for the party in whose favor it is made to rectify the submission, if he was not bound by it at the time of the hearing and making the award. 1 *Roll. Abr.* 245 ; 19 *Johns.* 143, 573. Was the submission mutual ? Was it entered into by the plaintiff, or by those authorised by her, or by law ? If the Overseers acted as her agents or attornies, and were specially authorised to enter into the submission, their act would be the act of their principal, and the award would be binding on her. 1 *Wils.* 28, 58. But there is no evidence of any such delegated authority, neither does it appear, by the submission or the award, that the plaintiff was present at or had knowledge of the execution of any of the papers; or was notified of, or present at the hearing; or had any knowledge of, or assented to any of the transactions. It cannot be contended that she was bound by the submission, or her legal rights in any manner affected thereby, unless the Overseers were authorised, *ex officio*, to bind her.

Every person is presumed to be competent to manage his own property, and no stranger can interfere, unless under authority of law, which it is incumbent on him to shew. Minors, by reason of their inexperience, and consequent exposure to the stratagems of the dishonest, are not authorised to bind themselves or their property in civil contracts, except for necessaries. But no one, not even the parent, is vested with power to act in their stead, touching their property, unless in the character of guardian, duly appointed. Lunatics, spendthrifts, idiots, and persons *non compos*, are placed under the same disability. But no person, however much he may waste his estate and expose himself to want, and the town to which he belongs to " charge and expense for his maintenance and support," is rendered incapable of contracting or discharging debts or disposing of his property, except by the appointment of a guardian, in the manner provided by statute. The Overseers of the poor, as such, have no power to interfere. *Stat.* 1821, *ch.* 51, *sec.* 53. Nor do we perceive that Overseers have any authority to interfere in the management or disposition of the property of those persons, who actually become chargeable to their respective towns. It is certain that such power is not expressly given by statute, nor can it be fair-

ly inferred. Towns are made liable for the relief and support of all poor and indigent persons lawfully settled therein, whenever they shall stand in need thereof. *Stat.* 1821, *ch.* 122, *sec.* 3. Overseers are to have the care and oversight of all such poor and indigent persons, see them suitably relieved, supported and employed— *sec.* 4.

By the 19th section the pauper is made answerable for the expenses incurred for his support, and provision is made for its recovery in an action of *assumpsit* for money paid, laid out and expended for his use. If the Overseers of the poor had, *ex officio*, the right of control and appropriation of the pauper's estate, why should it be necessary to authorise the town to recover in an action at law ? Why not merely direct the Overseers to apply the property of the pauper in payment of the expenses thus incurred. By the 20th section it is provided " that, upon the death of any pauper, who, at the time of his decease, shall be actually chargeable, the Overseers of the poor may take into their possession all the personal property belonging to such pauper, and if no administration shall be taken upon the estate within thirty days after his decease, said Overseers may sell so much of such property as may be necessary to repay the expenses incurred for such pauper." If the Overseers had the legal custody and control of the pauper's property, while living, why should it be necessary to empower them to take it into their possession after his death ? The inference to be drawn from these sections seems to be, that, while living, the pauper has the control of his property, if any he has ; that he and his property are liable to the town for such expenses as may have been incurred for his support, which may be collected by a suit at law ; that upon his death, and not till then, the Overseers have a right to " take into their possession the personal property belonging to such pauper, and hold it subject to the right of the administrator, if any shall be appointed within thirty days.

It is not perceived that any inconvenience will result from this construction. If the pauper have property and withhold it, the town by which he has been supplied can be reimbursed by attachment and sale. If he squander it, he may be restrained by the appoint-

ment of a guardian, and if he die, his property is to be administered like that of any other person, if any one interested will take administration upon it within thirty days ; if not, so much as shall be necessary to repay the expenses incurred by the town for his support may be sold.

The effect of a different construction might be inconvenient. Persons may, and without doubt do sometimes need and receive relief from towns during the most inclement season of the year only, or while their families are visited with sickness, or while temporarily destitute in consequence of conflagration or other disasters, and yet may possess some property and have outstanding claims. If in consequence of receiving relief from the town as " poor and indigent persons," they at once become incapable in law of managing what little property they have, of selling, purchasing, paying or collecting, and their whole power, in this respect, is transferred to the overseers, it is visiting upon the poor the chastisement which would seem to be due to malconduct, not to misfortune.

Such, we think, was not the intention of the legislature. We are therefore of opinion, that the overseers of the poor had no power to submit the plaintiff's demand to arbitration, unless thereto specially authorised by her ; that the award was not binding upon her, and, not being mutual, she cannot now take advantage of it, by making it the foundation of this action.

Suppose the award had been in favor of the defendant. Would it constitute a bar to an action brought by the plaintiff on the original demand ? We think not, for those only who are actually parties to the submission shall be bound by the award. *Jacob's Law Dict. Award II. Kyd on Awards*, 42. Every one who is capable of making a disposition of his property, or a release of his right, may make a submission to an award, *ibid.* If, therefore, the plaintiff was not rendered incapable of releasing her right, by reason of her pauperism, then the overseers of the poor were not, *ex officio*, clothed with the power of submitting her demands to arbitration, but she retained it.