NEW YORK PRACTICE REPORTS. 29

Kiersted agt. Orange and Alexandria R. R. Co.

## SUPREME COURT.

HENRY KIERSTED and another, respondents, agt. THE ORANGE AND ALEXANDRIA RAILROAD COMPANY and others, appellants.

*Reference — effect of reversal of judgment upon order of — Lease — use and occupation.*

*It seems* to be the settled practice of the first department that a reversal of a judgment, on the report of a referee, does not vacate the order of reference.

The power to vacate an order of reference on reversal of a judgment, lies only at special term and on motion duly made.

The plaintiffs demised certain premises in the city of New York to one Smith, the general agent of the defendants; in the lease, which was under seal, Smith was described as the general agent of defendants; he executed the lease individually; the lessee took possession under the lease, and the premises were used to carry on the business of defendants; the lessee occupied the premises for some months after the date of the lease. On or about the 3d of April, 1861, having ceased to be the agent of defendants, he left the premises, which were afterwards used and occupied by the new agent as a ticket office for the defendants route, until the 12th of February, 1862.

*Held*, that while the defendants never became liable under the lease given to Smith, they having had the benefit of the actual occupancy of the premises through Stewart, a clerk of theirs, by the assent and permission of both Smith and plaintiffs from the last day of March, 1861, until the middle of February, 1862, are liable to the plaintiffs for use and occupation.

The occupancy commenced under the direct authority of the defendants, given to White, their agent, before the beginning of the civil war, and continued through him and Stewart, who acted with and succeeded him, up to February, 1862.

*Held*, that the contract to be implied from the circumstances was not made while the war existed, but preceded it, and for that reason it was not

rendered void by the existence of the subsequent hostilities. They received a performance of it on the part of the plaintiffs, by their agents, who were within the Union lines, and though their liability could not be enforced while the war continued, it could be afterwards.

*First Department, General Term, March,* 1876.

NOAH DAVIS, *P. J.,* BRADY *and* DANIELS, *JJ.*

APPEAL from judgment recovered on the report of a referee, and from an order denying motion to set aside the report as irregular.

The action was for the use and occupation of certain premises on Broadway, New York city. The defendants and appellants composed " The Virginia and Tennessee Route " and " The Great Southern Mail Route," in the years 1860 and 1861, and their general agent, Mr. D. C. Smith, rented the premises for the use of the defendants, and did so by written lease, under which the defendants entered and occupied, and paid rents until May 1, 1861. Mr. D. C. Smith left the defendants' employment in January or February, 1861, and they continued to occupy the premises by their agents, Alfred Stewart and Jonah H. White, until February 12, 1862, when they were evicted by the plaintiff, leaving the rent unpaid for nine months and twelve days. The action was originally commenced on the lease signed by D. C. Smith, and the referee reported for the plaintiff, but the findings by the referee were under the lease which was held to be that of the agent, and not that of the principals, and the general term reversed the judgment, and held that the recovery must be for use and occupation, under the amended complaint (*See case reported in* 1 *Hun,* 151). Under the amended complaint for use and occupation, the case was tried again, and judgment obtained by plaintiff. The clause in the lease allowing re-entry and re-letting, at the loss of the defendants, in case of their default, was the liability that the defendants sought to avoid under the lease, as the clause

made them liable for the premises during the whole period of the term of the lease, and the recovery for use and occupation reduced their liability under the lease from $6,500 to $3,138. The facts as shown upon the trial are fully recited in the opinion.

*Joseph C. Jackson*, for defendants; *E. S. Van Winkle*, of counsel.

I. The court below erred in this, that there being no order of reference in the case to Mr. Nicoll, except the one of 29th November, 1870, which was by consent, and the issue tried was not found until long after that consent was given, and was on a new cause of action, the referee, Mr. Nicoll, had no right to hear said issue. The first issue was in covenant on a sealed agreement. This issue was tried by the referee, and thereon he found for the defendants. Issue was joined on this 14th August, 1869. The second issue was in assumpsit for use and occupation. Issue was joined on this 26th day of February, 1872. By the rendering of the first judgment, the duty and power of the referee was *functus officio* (*Bonner agt. McPhail*, 31 *Barb.*, 106). The rule or order appointing a referee is his commission, and without it he should not proceed to act. Some action of the court shown by its records is necessary. *Diddell* agt. *Diddell* (3 *Abb. Pr.*, 167, 173): Motion to confirm report set aside. "The reference must be of the issues, and the referee should find or pass upon the issues. In this case there does not appear to be any written consent to the reference. The rule for reference is not in compliance with the requisitions of the Code, and although the referee, in a supplemental report, finds the facts, yet the issue was not referred to him." *Ayrault* agt. *Sackett* (17 *How.*, 507): "The signing of a report by the referee, and giving notice of the fact to the party entitled, are acts which close his judicial authority therein." Code of Procedure (*sec.* 272): "A report, signed and delivered, stands as the decision of the court." *Trufant* agt. *Merrill* (6 *Abb.*

*Pr. R.* [*N. S.*], 462) : "After a referee has reported, although he does not pass upon all the questions referred to him, he is *functus officio*, and it is not incompetent for the court to appoint a new referee as to such undetermined questions, instead of setting him in motion again " (*S. C.*, 37 *How.*, 531 ; 1 *Sweeny*, 462). *Shearman* agt. *Justice* (22 *How.*, 241): " When a referee first delivers his report, duly signed, his power over the subject-matter is exhausted " (*See opinion of justice* ROBINSON *in Devlin* agt. *The Mayor, ante,* 11). The courts, in setting aside the report of a referee, usually insert in the order a discharge or continuance of the order of reference. The order having expired by its own terms, this order of discharge is not necessary, but renders the proceedings more formally right. Where an amendment is made to the pleadings, after an order of reference, it would be proper, if either party desired it, to vacate the order of reference (*Beardsley* agt. *Stover,* 7 *How.*, 295). Per HARRIS, J.: " It would have been proper, had either party desired it, to vacate the order of reference, but, as nothing was said on the subject, the reference may stand." In *Balcom* agt. *Woodruff* (7 *Barb.*, 13), it is stated that the general rule is, that a party who has not applied for an amendment until he has been nonsuited is too late to ask for a new trial, in addition to an amendment. When, after a trial before a referee, a new trial is ordered, it is not usual to send the case back to the same referee. The general practice is to vacate the order of reference (*Sharp* agt. *Mayor of N. Y.*, 31 *Barb.*, 579 ; *Murphy* agt. *Winchester,* 35 *id.*, 620). In the decision of *Sharp* agt. *The Mayor,* MULLIN, J., says : " When an action has been issued, and tried by the referee upon the facts, and a report made by him in the cause, and a new trial is ordered, it is not ordinarily proper to send it back to the same referee, and for very obvious reasons — he has heard and seen the parties and their witnesses ; he has his estimate of their credibility and of the force and effect of their evidence, and the defeated party enters upon a new trial before him, with the

views and prejudices of the referee all against him. This is a current which the party ought not to be required to struggle against. The parties do not stand equal before the referee. He is not indifferent between them. No one would think of trying a cause the second time before the same jury, and although an intelligent referee would be less likely to retain or act on his convictions received on the former trial, yet he is but a man, and, with the best intentions, he may be unable, wholly, to lay aside or forget his bias." In the case of *Murphy* agt. *Winchester :* " In appointing a new referee, we must not be understood as imputing any improper prejudice or bias to the referee who has already heard the case. But a new referee is appointed on the same grounds, and for the same reasons, which require a new jury to retry a cause in which a verdict has been had, and a new trial ordered. No lawyer would consent that the first jury, or any member of it, should sit at the same trial." Now, in the case at bar, the defendants had moved to set aside the report on the ground of his being prejudiced against defendant. Per MULLIN, J : The want of power of the referee to try the case goes to the jurisdiction, and can, therefore, be raised at any stage of the proceedings (*Garcie* agt. *Sheldon*, 3 *Barb.*, 232 ; see, also, *Bucklin* agt. *Chapin*, 35 *How.*, 155, 160). This was an action the facts in which could not be referred except by consent (*Code, secs.* 270, 271). Where can consent be found, written or verbal, that this trial of this fact of use and occupation might be tried by a referee ?

II. In order to maintain the action of use and occupation, the plaintiff must prove an actual tenancy by the defendants, or an agreement, express or implied, in law, by the defendants to pay rent for the same. If the plaintiffs prove a sealed agreement, it, of course, defeats the action for use and occupation. In this case there is a sealed agreement, and it has been held that that had only bound the parties to it. If there had at that time been an actual tenancy by the defendants, there had been no need for the action for use and

occupation. There is no pretense that, apart from the lease taken by Smith, there was any actual agreement to hire or use and pay by the defendants. Where, then, does or can the implied agreement arise? All the circumstances are the same. They did not render the defendants liable under the lease; how, then, can it render them liable otherwise? The lease was in full force during the whole period for which rent is claimed in this action.

III. This action of use and occupation can only be sustained on the ground of a subsisting contract of tenancy, express or implied (1 *T. R.*, 378). The action is created by statute (11 *G.*, 2, 493, 219; 1 *R. S.*, 748; *sec.* 26). It cannot rest on a sealed agreement. The defendants cannot be held on the lease to Smith (*Glover* agt. *Wilson*, 2 *Barb.*, 264; *Bedford* agt. *Terhune*, 30 *N. Y.*, 453). When a lease is outstanding, and a party other than the lessee is in possession, it is presumed that he is the assignee of the lease, unless it is shown he holds under demise from lessee, and as assignee he is not liable in an action for use and occupation, as his liability is not founded on priority of estate, and the action must be on the lease (*Bedford* agt. *Terhune*, 1 *Daly*, 371, *and ut supra*). No express parol agreement has been proved or claimed, and we maintain that no implied agreement appears by the evidence. Suppose there are some shadowy evidences going to this point — the point appears to be proof of an illegal agreement — which the court would not admit if fully proved, and certainly will not go out of its way to imply or infer it. The contract sought to be inferred would be between loyal citizens and alien corporations during a time of war — commencing about 30th April, 1861, and running until February, 1862. The war commenced in certain states by the proclamation of the blockade embracing them, and made 19th April, 1861, and as to other states, to the second proclamation embracing them, and made on the 27th April, 1861. Its termination, as to certain states, must be referred to the proclamation of 2d April, 1866, declaring the war

closed as to those states, and, as to Texas, to the proclamation of 20th August, 1866 (*The Protector*, 12 *Wall.*, 700). The war began, so as to effect commercial engagements, August 16, 1861 (54 *N. Y.*, 78; *McStea* agt. *Matthews*, 50 *id.*, 166).

IV. "Any landlord may recover, in an action on the case, a reasonable satisfaction for the use and occupation of any land or tenement by any person, under any agreement not made by deed ; and if any parol demise or other agreement, not being by deed, by which a certain rent is reserved, shall appear in evidence on the trial of any such action, the plaintiff shall not on that account be debarred from a recovery, but may make use thereof as evidence of the amount of the damages to be recovered " (3 *R. S.*, 37, *sec.* 20 ; 1 *Rev. Laws*, *p.* 444, *sec.* 31). The action only exists by virtue of the statute; no such action lay at common law ;. therefore, (1) it must be based on an agreement not made by deed, (2) and a demise by deed to another party cannot be used as evidence of the damages to be recovered. (*a.*) This action is based on a sealed agreement — a deed; and the use and occupation claimed is only under the deed. The defendants' non-liability under the deed is already *res adjudicata*. How, then, can that lease be proof of an occupation by the defendants ? (*b.*) The lease being under seal, cannot be used as evidence of the value of use and occupation. (*c.*) The lease being outstanding, according to the findings at the time of the trial and of the report, can there be any action for a simultaneous use and occupation ? (*d.*) To sustain an action for use and occupation, there must be proof of tenancy or of a contract, express or implied. (*e.*) The findings of the referee in regard to use and occupation are unsustained by the evidence.

*T. C. Cronin*, for plaintiff.

I. The order of reference was entered by consent. The reversal of the judgment at general term did not discharge or

vacate the order of reference, and this could only be done by
motion. The defendants made no motion, as the reversal was
purely upon a technical ground, and they were satisfied with
the order of reference previously entered by consent, and also
with the referee, who had already decided in their favor on
the lease, and held that the plaintiff could not recover under
the covenants of it, thereby saving them a large sum. They
raised the question for the purpose of saving some technical
question by which it was hoped to prolong the litigation
beyond the lives of the plaintiffs. But the question was not
well taken as one of practice, and has been often so held.
The general term in the first department has held that the
power to vacate the order of reference on reversal of the
judgment lies only at special term, and on motion duly made.
This is the settled practice in the department (*Shuart* agt.
*Taylor*, 7 *How.*, 251; *Schermerhorn* agt. *Van Allen*, 13 *id.*,
82; *Billings* agt. *Vanderbilt*, 15 *id.*, 295; *Bissell* agt. *Ham-
lin*, 13 *Abbott*, 22; *Rippoman* agt. *Strong*, 2 *Hilton*, 52;
*Perry* agt. *Moore*, 2 *E. D. Smith*, 32).

II. The order of Mr. justice BARNARD, made on motion,
amending the complaints so as to include a cause of action
for use and occupation, was not appealed from, but was
acquiesced in by defendant, and an amended answer served
by defendants. The order cannot be attacked collaterly
(*Southword* agt. *Scofield, Albany Law Journal and Daily
Register*, 3d *September*, 1873). The amendment did not
change the form of the action, it simply added another cause
of action growing out of the same transaction, that is, use and
occupation, arising out of the execution of and entry under
the lease. Both causes of action were on contract (*See Code,
sec.* 167; *Bedford* agt. *Terhune*, 30 *N. Y.*, 453).

III. The motion made to the referee by the defendants to
amend their answer by setting up the statute of limitations
was properly denied; the amendment was one not allowed
by law to the defendants as foreign corporations (*See Olcott*
agt. *Tioga R. R. Co.*, 20 *N. Y.*, 210). The amendment was

Kiersted agt. Orange and Alexandria R. R. Co.

one that could only be made by the court on motion at special term, as was done by the plaintiff in amending the complaint so as to include use and occupation. On a second trial before the referee, he reported in favor of plaintiffs for use and occupation. From the second judgment the defendants appeal. The referee followed the directions and law of the general term, but on additional and stronger evidence even than on the first trial, and his judgment was affirmed.

IV. The evidence fully supports the finding of the referee under the amended complaint for use and occupation. The use and occupation of the premises by the defendants is not contradicted or disputed by any evidence in the case, nor is the relation of landlord and tenant; nor is it disputed that the defendants entered into the possession with the consent and knowledge of the officers of the company, and with a full knowledge of the existence of the lease, and with an intent on their part to ratify it (*Hall* agt. *Western Transportation Co.*, 34 *N. Y.*, 284; *Moffat* agt. *Smith*, 4 *id.*, 126). On the lease was the following, admitted to be genuine: "Approved on behalf of the Orange and Alexandria Railroad Co., by John S. Barbour, President." It will be seen that all of the defendants knew of the existence of the lease and intended to ratify it. The relation of landlord and tenant existed from November, 1860, by lease, and by use and occupation on the surrender, by Smith in January or February, 1861. Rent was paid by defendants thereafter and up to May 1, 1861.

V. The value of the use and occupation of the premises was undisputed. The value was shown to have been paid for months by the defendants, and it was the monthly rent fixed in the lease, and was paid after Mr. Smith left in January or February, 1861, by defendants (*McCarty* agt. *Ely*, 4 *E. D. S.*, 375; *Lowe* agt. *London R. R. Co.*, 114 *Eng. L. and Eq. R.*, 18; *Clark* agt. *Mayor, &c.*, 3 *Barb.*, 297; 4 *Wend.*, 285; *Williams* agt. *Sherman*, 7 *id.*, 109).

VI. The question of war and rebellion has no relation to any legal rights of the plaintiff against the defendants for use

and occupation. The referee finds actual use and occupation, and the evidence supports it. It is a new doctrine that on a cause of action, legal and valid, no action will lie, because, forsooth, there was a rebellion in some parts of the republic. The defendants, as corporations without souls, could have hardly sustained the character of belligerents. It is not to be presumed that they fought long and ardently. There was no condition of war in New York city when the use and occupation was valuable to the defendants. War did not destroy or suspend actual use and occupation, as the referee finds and the testimony shows. War did not trouble defendants' actual possession and enjoyment of our premises upon a contract made in times of peace. They kept the agents, the furniture, the signs and the ostensible business on the plaintiffs' premises. The defendants paid the $333 rent for April, 1861, though the president's first proclamation was issued 19th of April, 1861, and White himself occupied the premises until August 26, 1861, though the president's second proclamation was dated August 16, 1861. As this action was not commenced until 1869, or four years after the rebellion closed, it is difficult to determine upon what line of argument the question of enemies, belligerents, war, &c., can become material. The defendants, through their agents, lived in New York city during the period of the rebellion, claimed as the time of the use and occupation of the premises, and within all the cases, the defendants could hardly claim that they were alien enemies, while living in this state and city, when the cause of action arose, and engaging the undisturbed possession of plaintiffs' premises. The question, when raised on the former argument, was not deemed worthy of any serious notice by the court (*See* 1 *Hun*, 151).

VII. Whenever the defendants hold and occupy the premises the action for use and occupation will lie. Having paid rent, and being in possession, they were conclusively liable for the amount paid as a ratio of value, and for the time of actual occupation (*See Hoffman* agt. *Delihanty*, 13 *Abbott*,

Kiersted agt. Orange and Alexandria R. R. Co.

388; *Sturm* agt. *Williams*, 38 *Superior Ct. R.*, 344; *Jewell* agt. *Schoeppel*, 4 *Cowen*, 566; *Williams* agt. *Sherman*, 7 *Wend.*, 109; 2 *Revised Statutes, part 2, title 4, chap. 1, sec. 1, p.* 152).

VIII. The objections made by defendants to the jurisdiction of the referee are each of them frivolous, and were so held by this court on the first argument. The order of ref rence is by consent. The order amending complaint is on d ie notice and affidavits. It is to be presumed that the order was based upon a full statement of the then condition of the case, that it was pending before Henry Nicoll, Esq., referee. The general term so held in 1 Hun, 151. The defendants served an amended answer in due time to the amended complaint, and did not appeal from the order allowing it. The order of reference having been entered by consent, and no motion made by either party to vacate it, it was in full operation and effect, and gave authority and jurisdiction to the referee to proceed and determine the issues. From the order amending the complaint no appeal was taken by defendants, but issue was joined in conformity thereto as stated before.

DANIELS, *J.* — The motion was made to set aside the referee's report, because he was not authorized to hear the cause, or competent to hear it; that his report was not authorized by the evidence, and he refused to find facts which had been proved in the case, and was prejudiced against the defendants. The first of the grounds is the only one worthy of any consideration for the purpose of deciding the appeal from the order. For, if the report was made without evidence to sustain it, the mode which has been provided for reviewing that, is an appeal from judgment recovered upon it, and that has been taken in this case. And if the referee declined to find facts, which he ought to have found under the evidence, a motion should have been made for an order, requiring further finding as to such facts (*Tallmann* agt. *Bresley*, 58 *N. Y.*, 123).

Kiersted agt. Orange and Alexandria R. R. Co.

His omission in that respect furnished no good reason for setting aside the report on motion. The charges of incompetence and prejudice were supported by a general affidavit made by the defendant's counsel, very slightly indeed sustained by that of another person, who was with him on two occasions during the trial. The affidavit of the defendants' counsel was fully met and overcome by those made by the plaintiffs' counsel, and the two stenographers present, during different parts of the trial ; for they show the charges made to have been without the least foundation. The referee was apparently disappointed with the decision of the court directing a new trial, but beyond that nothing remarkable appeared in his statements or conduct.

The reference was ordered upon filing the consent of the respective parties, and by the order made the action and the issues therein, were referred to be heard and determined. At the time when it was entered the complaint was upon a lease in writing executed under seal for the occupancy and enjoyment of certain demised premises on Broadway in the city of New York. Afterwards it was, upon special motion, changed to a claim for the use and occupation of the same premises. But no change in the order of reference was either provided for or made, that was allowed to stand as it had been entered. The order made upon the motion simply provided for an amendment of the pleadings without disturbing or affecting the reference which had previously been directed with the consent of the parties.

It was no part of the design to vacate or interfere with that. No such relief appears to have been applied for, and it in no way resulted from a mere amendment of the pleadings. Such amendments are within the ample powers for that purpose conferred upon the court (*Code, secs.* 173, 174, 177,) and they are very commonly made, and are not supposed or intended to abrogate a previous reference of the action without some expression of the existence of that purpose. The combined effects of both the orders was to place the cause before

Kiersted agt. Orange and Alexandria R. R. Co.

the referee for trial upon the new issue, the same as though that had been the one originally joined. And, when the judgment was reversed and a new trial ordered, that, as a matter of course, was to be had in the same way, because the order of reference still continued operative in the case. While the order continued in force that supplied the referee with complete authority to proceed as he did with the last trial of the action. There was only one way in which that could have been avoided, and that was by a motion to vacate the order of reference, which was not made by either of the parties. No other reasons deserving any particular consideration have been urged in support of the objection taken to the authority of the referee to hear and determine the case. The motion made to set aside his report was very properly denied.

The plaintiffs themselves leased the demised premises and others from the 1st of May, 1860, until the 1st of May, 1863, and by a lease executed by them and their lessee they leased the premises in controversy to David C. Smith, who was the agent of what was called the Virginia and Tennessee route, which was comprised of the defendants' railroads. The lease was made on the 1st of November, 1860, for a term extending from that time until the 1st of May, 1863. On the 1st of April, 1862, the plaintiffs surrendered the lease made to them by the owner of the property, but by the terms of the agreement they were to be allowed to collect the rent in suit if that should be done by the commencement of the year 1864. That was not done, and for that reason it has been objected that the action could not be maintained by the plaintiffs. The proofs, however, showed that the owner reassigned the demand to them by an instrument in writing, dated on the 12th day of May, 1869, which was before the commencement of the action, and that transfer was made upon the understanding that the owner and assignor was to be paid out of the proceeds of the recovered $2,150 owed him by the plaintiffs for rent reserved on the lease received by

Kiersted agt. Orange and Alexandria R. R. Co.

them. The residue, whatever it might be, resulted to the plaintiffs, and that, under the circumstances shown by the evidence, was sufficient to entitle them to prosecute and maintain the action against the defendants in their own names. They were owners of the demand, in part, and trustees of an express trust as to the residue (*Howe* agt. *Savond*, 49 *Barb.*, 403; *Waring* agt. *Indemnity Fire Ins. Co.*, 45 *N. Y.*, 606; *Noe* agt. *Christy*, 51 *id.*, 270; *Code, sec.* 113; *Devoe* agt. *Barnes, first department*, *May*, 1876).

The evidence showed that the lease was taken by Smith, the lessee, under a general employment by the defendants, as the Great Southern Mail Route, for the purpose of selling their tickets and transacting their business in the city of New York, and with the expectation that they were to become parties to it. For that purpose he and the persons in his employment occupied the premises demised by it until the last day of March, 1861, when he left them in the possession of Stewart who, at that time, was his clerk. The officers of the defendants, or most of them, repaired to the city of New York for the purpose of completing the undertaking and arranging the business of the route in April, 1861.

But they were prevented from completing their business by the assault upon Fort Sumpter and the precipitation of the civil war. The president of the Orange and Alexandria Railroad Company did, substantially, accept the lease, but it was done under the qualification that it should only become binding on his company when all the rest assumed it; and as that was never afterwards done its terms remained binding and obligatory alone upon Smith, the lessee named in it (*Briggs* agt. *Partridge, court of appeals, March*, 1876).

When he left he made no assignment of the lease, neither did he underlet the premises to any other person. He simply went away from them himself, leaving whatever he had belonging to the defendants in the office he had taken for them, and after that Stewart continued in charge until the 2d or 3d of April, 1861, when White testified that he was

Kiersted agt. Orange and Alexandria R. R. Co.

sent by the officers of the route to take charge of the office, and that he did so, and held possession of the Great Southern Mail Route. This possession continued until the 26th of August, 1861, when he took his departure, leaving Stewart in control of the premises. While White was there he stated that he kept possession as long as he received instructions from the officers of the defendants, and left when a deputy of the sheriff, who for a part of the time held control on a claim or debts prosecuted against them, abandoned the premises. .

It also appeared that the rent was paid as it was reserved in the lease, up to the 1st of May, 1861, by Smith and Stewart, and that the defendants contributed their respective shares of such payments.

After White left, Stewart remained in possession until the 10th or 12th of February, 1862, when the plaintiffs re-possessed themselves of the premises, by requiring his removal therefrom. From the 1st of May, 1861, to that time, no rent was paid ; and the evidence of one of the plaintiffs, which on that subject was uncontradicted, was that the use of the premises was reasonably worth the rental mentioned in the lease, and that was the amount allowed by the referee.

In April or May, 1861, White stated that he received instructions to pack up and take the office furniture and things away through Knoxville and Memphis. But no information of that fact was given to the plaintiffs, and the instructions were in no way complied with by the agent who received them, and who was in, according to his own testimony, by the direct orders of the defendants. He remained until August, and then left the office with Stewart in charge of it, who continued to hold it for the defendants until the final surrender made in February, 1862. His agency and authority for that purpose were denied by the defendants, but it appeared that he afterwards sued them for his services and attached their property for the debt claimed to have been created by their performance, and that the debt was afterwards paid by the defendants. The evidence given on the

part of the plaintiffs from which this fact appeared, was materially strengthened by that of the witness Barbour, the president of the Orange and .Alexandria Railway Company, who stated that the settlement with Stewart was made by the line. He also testified that his company paid its share of Mr. Stewart's bills as clerk of the lessee, Smith. The defendants' witness, Gott, also swore that he recollected of Stewart's receiving his money from them. Both Barbour and the defendants' counsel testified that the settlement of Mr. Stewart's claim was a matter of policy, and the latter stated further, that this was mentioned to the attorney receiving the amount of the claim. What the defendants' policy was in this respect, was not disclosed. It may very well have been to relieve the defendants' property from attachment, by paying a debt for which they were legally liable, consistent with the statements of these witnesses, and what was the probable fact in the case. And in contradiction of the statement made that such was the reason assigned for the settlement, the attorney for Stewart swore that he made no negotiations or settlement, and had no recollection that it was said to be made as matter of policy.

It is very likely from the circumstances shown and the evidence of all the witnesses, that Stewart was paid, because the defendants had no good ground for resisting the claim made in his behalf, for the performance of his services, and that was an unequivocal recognition of his agency for the defendants while he continued in possession of the premises. Beyond that it appeared, by the evidence of Barbour, that Stewart was appointed at one of the general meetings of the line, and before the next was held, they decided to break up the office, and he declined to swear that Stewart did not act as the agent of the defendants, and presumed the tickets sold by Stewart were received on the road as long as he sold them. The evidence of his agency was ample for the purpose of subjecting the defendants to the legal consequences of his acts. And while they never became liable under the

lease given to Smith, they had the benefit of the actual occupancy of the premises through Stewart, by the assent and permission of both Smith and plaintiffs, from the last day of March, 1861, until the middle of February, 1862. And as that was not under an assignment of the lease, or by the creation of a sub-tenancy, it must have been with the understanding that the defendants assented to pay the rent as long certainly as the occupancy extended. The payment of it to the first of May, as well as the other circumstances referred to, are consistent with no other supposition. A case of use and occupation was therefore shown within the decision previously made by this court in this case (*Kiersted* agt. *Orange and Alexandria R. R. Co.*, 8 *N. Y. Sup. Ct.*, 151 ; *see also* 2*d ed. Taylor's Landlord and Ten.*, secs. 640, 643).

The occupancy commenced under the direct authority of the defendants, given to White before the assault upon Fort Sumpter, which has been held to be the beginning of the civil war, and it continued through him and Stewart, who acted with and succeeed him, until near the middle of February following. The contract to be implied from the circumstances was not, therefore, made while the war existed, but it preceded it, and for that reason it was not rendered void by the existence of the subsequent hostilities within any of the authorities cited by the learned counsel for the defendants. They received a performance of it on the part of the plaintiffs by their agents, who were within the Union lines, and though their liability could not be enforced while the war continued, it could be afterwards, as it has been, by the prosecution of the present action.

This was substantially held in the case of *Buchanan* agt. *Curry* (19 *Johns.*, 137), and the soundness of the conclusion does not seem to have been anywhere questioned. No good reason can be perceived for exonerating the defendants from the payment of this rent because of the existence of the civil war. If they desired to escape liability they should have withdrawn their agent and property from the office and ter-

Kiersted agt. Orange and Alexandria R. R. Co.

minated their occupancy of the premises. And that they entirely failed to do. A suspension of the sale of their tickets was not sufficient to discharge them. The conclusions of the referee were well sustained by the evidence, and they render the defendants legally liable for the rent in suit. The judgment and order appealed from should be consequently affirmed, with costs.

NOTE. — April, 1877. The court of appeals reversed the judgment and granted a new trial, ANDREWS, J., delivering the opinion. The new trial was granted on questions involving the merits, and the court of appeals *appear* to hold that the practice as to vacating orders of reference, on the reversal of judgments, depends upon the practice of the court in which the action is pending. In the case of *Devlin* agt. *The Mayor* (*ante*, 11) the chief justice stated orally that the court was of the opinion that a reversal of a judgment on the report of a referee, did not vacate the order of reference — [ED.